**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PARIS CHERER** | ) | |
| **#40440-048,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 15-cv-00771-NJR** |
| | ) | |
| **OFFICER KRAWCZYK,** | ) | |
| **OFFICER CLAYTON,** | ) | |
| **LIEUTENANT MALCOLM,** | ) | |
| **and WARDEN WALTON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Paris Cherer, an inmate who is currently incarcerated at the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"), brings this action pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff sues four federal officials at the United States Penitentiary in Marion, Illinois ("USP-Marion"), in connection with a false disciplinary ticket he received for using narcotics. He was found guilty of the rule violation and transferred from USP-Marion to FCI-Pekin. Plaintiff sues Warden Walton, Lieutenant Malcolm, Officer Clayton, and Officer Krawczyk under the Eighth Amendment for their involvement in this prison transfer. He seeks monetary damages and a transfer back to USP-Marion.

### Merits Review Under 28 U.S.C. § 1915A

Plaintiff's complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to

dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint does not survive preliminary review under this standard.

### The Complaint

Plaintiff's claims arise from a disciplinary ticket that he received at USP-Marion on December 11, 2014 (Doc. 1-1, p. 2). Officer Krawczyk allegedly ordered Plaintiff to submit to a drug test after he refused to cut his hair (Doc. 1, p. 7). Plaintiff's urine tested positive for barbiturates and, more specifically, Phenobarbital. He was issued a disciplinary ticket for the use of narcotics. The incident report states:

> On 12/11/2014 at 8:02 am, Inmate Cherer, Paris #40440-048, provided a urine specimen for a random drug test. The cup tested positive for Barbiturates. On 12/18/2014, Phamatech Laboratories report ID 0002330818, confirmed the urine was positive for the presence of Barbiturates, specifically Phenobarbital. Health Services at USP Marion has provided a medication list for Cherer. The USP Marion Pharmacist and Phamatech Labratories has confirmed Cherer is not currently on any medication that would cause him to test positive for any Barbiturates including Phenobarbital. Confirming information was received by this investigator on 12-21-2014.

(Doc. 1-1, p. 2).

Plaintiff was placed in administrative detention on or around December 22, 2014, pending a hearing on the ticket (Doc. 1-1, p. 18). The complaint does not describe the disciplinary hearing, the results of the hearing, or the punishment imposed. Plaintiff also did not attach a copy of the disciplinary hearing summary to the complaint because he alleges that he never received a copy. Therefore, the Court does not know the exact terms or duration of any punishment that was imposed.

Plaintiff claims that the ticket should not have been issued in the first place. At the time of the drug test, Plaintiff had been taking Phenytoin for more than eight years to control his seizure disorder (Doc. 1, p. 8). Phenytoin is the generic form of Dilantin and is related to barbiturates. The prescription label warns patients to "TALK WITH YOUR DOCTOR before you use this medicine if you or a family member have (sic) had an allergic reaction to a barbiturate (eg, phenobarbital)" (Doc. 1, p. 8; Doc. 1-1, p. 13). The label also warns patients that the medicine may "interfere with certain lab tests" (*Id.*).

Plaintiff claims that Officer Krawczyk, the prison official who issued the ticket, and Officer Clayton, the prison official who distributed medications, both knew that Plaintiff was taking Phenytoin at the time of the drug test. Still, they stated on the disciplinary ticket that "Cherer is not currently on any medication that would cause him to test positive for any Barbiturates including Phenobarbital" (Doc. 1, p. 10; Doc. 1-1, p. 2). Plaintiff presented documentation establishing his long term use of seizure medication to Lieutenant Malcom and Warden Walton, although it appears that he did so after his disciplinary hearing concluded. In response, Lieutenant Malcolm stated, "You may win your appeal, but you will be long gone by then" (Doc. 1, p. 10). Plaintiff did not win his appeal, however, based in part on his failure to attempt informal resolution of the matter before using the formal grievance process (Doc. 1-1, p. 20).

Plaintiff was transferred to FCI-Pekin. Although he does not allege that he is a convicted sex offender, Plaintiff claims that sex offenders are mistreated there, the prison has no sex offender treatment program, and sex offenders are excluded from other prison programs (e.g., sports and jobs programs). Plaintiff also claims that his personal property was stolen at some point during his transfer from USP-Marion's Special Housing Unit to FCI-Pekin.

Plaintiff now sues Warden Walton, Lieutenant Malcolm, Officer Krawczyk, and Officer Clayton for subjecting him to cruel and unusual punishment in violation of the Eighth Amendment (Doc. 1, p. 16). He seeks monetary damages and a transfer back to USP-Marion.

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in Plaintiff's *pro se* complaint into three (3) counts, as set forth below:

**Count 1:**  Defendants deprived Plaintiff of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment, by issuing him a false disciplinary ticket that resulted in his transfer from USP-Marion to FCI-Pekin;

**Count 2:**  Defendants retaliated against Plaintiff, in violation of the First Amendment, by issuing him a false disciplinary ticket that resulted in his transfer from USP-Marion to FCI-Pekin; and

**Count 3**:  Defendants subjected Plaintiff to unconstitutional conditions of confinement or failed to protect him, in violation of the Eighth Amendment, by placing him in the Special Housing Unit at USP-Marion and then transferring him to FCI-Pekin.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion as to their merits.

## Count 1 – Fourteenth Amendment Claim

The complaint fails to state a viable Fourteenth Amendment claim against Defendants for depriving Plaintiff of a protected liberty interest without due process of law (**Count 1**). Plaintiff alleges that he was transferred to administrative segregation at USP-Marion and then to

FCI-Pekin as a result of the disciplinary ticket. Whether either placement gave rise to a protected liberty interest or triggered due process protections is unclear, given the lack of information offered in support of the claim.

As a threshold matter, the Court is unable to determine whether the claim is barred under *Heck v. Humphrey*, 512 U.S. 477, 480-81 (1994). According to *Heck,* "when a state prisoner seeks damages in a [Section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Id*. at 487. This holding has been extended to judgments in prison disciplinary proceedings. *See Edwards v. Balisok,* 520 U.S. 641 (1997).

Thus, when a prisoner seeks damages based on allegations that imply the invalidity of a punishment impacting the fact or duration of a prisoner's confinement, such as the loss of good time credits, the prisoner cannot proceed with a Section 1983 claim until his disciplinary decision has been invalidated. *See Simpson v. Nickel,* 450 F.3d 303, 306–307 (7th Cir. 2006) (*Heck* and *Edwards* held "that a prisoner whose grievance implies the invalidity of ongoing custody must seek review by collateral attack"). The rationale in *Heck*, although typically applied in Section 1983 actions, applies in this case as well. *See Clemente v. Allen*, 120 F.3d 703, 705 (7th Cir. 1997) (collecting cases) (*Heck* analysis applies to *Bivens* action). And because Plaintiff failed to provide the Court with any information regarding his actual punishment, including information addressing the loss of good conduct credit, the Court is unable to determine whether Count 1 is *Heck*-barred.[1]

---

[1] Plaintiff is still awaiting paperwork from his disciplinary hearing (Doc. 1, p. 14). He does not allege, however, that he is unaware of the punishment that was imposed as a result of the hearing. His failure to disclose this basic information prevents the Court from properly analyzing his claims.

Even if it is not, the fact that Plaintiff was issued a false disciplinary ticket, without more, gives rise to no Fourteenth Amendment claim. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

With one exception, Plaintiff has not alleged that he suffered a due process violation at his prison disciplinary hearing. Minimum procedural due process requirements in disciplinary proceedings include: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). In other words, courts must determine whether the decision of the hearing board has some factual basis. *Webb v. Anderson*, 224 F.3d 649 (7th Cir. 2000). Even a meager amount of supporting evidence is sufficient. *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007). The only potential due process violation identified in the complaint is the delay in Plaintiff's receipt of paperwork from his disciplinary hearing (Doc. 1, p. 14). But even this gives rise to no claim, if Plaintiff's placement in administrative segregation at USP-Marion and transfer to FCI-Pekin created no protected liberty interest that triggered due process safeguards in the first place.

With regard to administrative segregation, the law is clear that no protected liberty interest is at stake. The Constitution itself "does not create an interest in avoiding transfer[s] within a correctional facility." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). The Fourteenth Amendment provides a liberty interest in avoiding placement in more restrictive conditions, like segregation, when the conditions "pose an atypical and significant hardship when compared to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). But "inmates have no liberty interest in avoiding transfer to discretionary segregation-that is, segregation imposed for administrative, protective, or investigative purposes." *Id.* (citing *Lekas v. Briley*, 405 F.3d 602, 608-09 n. 4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *Crowder v. True*, 74 F.3d 812, 815 (7th Cir. 1996). This is because discretionary, or administrative, segregation is not considered "atypical," but rather an "ordinary incident of prison life" that prisoners should anticipate during their time in prison. *Townsend*, 522 F.3d at 771. Consistent with this case law, Plaintiff's claim that he was transferred to administrative segregation at USP-Marion does not give rise to a protected liberty interest that triggers due process protections.

Plaintiff's transfer to FCI-Pekin, standing alone, also supports no claim. "[P]risoners possess neither liberty nor property in their classifications and prison assignments. States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)). The Constitution does not guarantee placement in a particular prison. *See also Meachum*, 427 U.S. at 224.

Plaintiff *may* have a claim, however, if he was placed in segregation at FCI-Pekin and endured "atypical and significant hardship." Courts consider two factors when making this determination: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). Plaintiff does not allege that he was placed in segregation at FCI-Pekin or state the duration of his confinement there. As for the conditions he endured, Plaintiff's allegations are vague. His complaints focus on the general mistreatment of sex offenders, but he does not allege that he is a convicted sex offender.

Given the lack of basic information offered in support of this claim, Plaintiff cannot proceed with **Count 1** at this time, and it shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 2 – First Amendment Claim**

Plaintiff's retaliation claim (**Count 2**) under the First Amendment meets with the same fate. According to the complaint, this chain of events began with Plaintiff's refusal to cut his hair. Officer Krawczyk retaliated against him by ordering a drug test, knowing that he would not pass the test.

Federal courts recognize a claim for "retaliation" when prison officials take adverse actions against prisoners for exercising their First Amendment rights. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Johnston v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000). In order to prevail on a claim, the prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the defendant's actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Retaliation is usually difficult to prove directly and, in most cases, it must be inferred from the circumstances surrounding the prisoner's exercise of his constitutional

rights and subsequent punishment. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). To state a claim for retaliation, an inmate need only identify the act of retaliation and the protected activity, such as the filing of a grievance, that sparked the retaliatory act. *Higgs*, 286 F.3d at 439.

Here, again, Plaintiff's allegations are simply too vague. He claims that Officer Krawczyk retaliated against him for cutting his hair. A haircut may or may not be protected activity under the First Amendment, and Plaintiff offers no information regarding the circumstances surrounding his refusal to get a haircut. The Court is therefore left to guess, which it is not required to do. **Count 2** shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 3 – Eighth Amendment Claim**

Finally, the complaint supports no viable Eighth Amendment conditions of confinement claim or failure to protect claim (**Count 3**) against any of the defendants. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm to health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Pursuant to the Eighth Amendment, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). Such constitutional tort claims against federal officers are brought pursuant to *Bivens*. *See also Arnett v. Webster*, 658 F.3d 742, 750 n. 1 (7th Cir. 2011). "[F]ederal prisoners suing under *Bivens* may sue relevant officials in their individual capacity only." *Glaus v. Anderson*, 408 F.3d 382, 389 (7th Cir. 2005).

The complaint supports no Eighth Amendment claim against the defendants. Plaintiff alleges that sex offenders are mistreated, however, no allegations suggest that he is a sex offender or has been targeted for mistreatment by anyone. Plaintiff also complains that his property was taken, but he does not name the defendants in connection with this claim or explain why this amounts to a violation of his Eighth Amendment rights. Like the other claims, **Count 3** shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### First Amended Complaint

As discussed in detail above, the complaint fails to state a claim upon which relief may be granted. Plaintiff excludes critical information from his complaint, including: (1) the reason he refused to cut his hair; (2) whether his refusal to do so was protected under the First Amendment; (3) a description of any due process violations that occurred at his prison disciplinary hearing; (4) a copy of his disciplinary hearing summary (if available); (5) a list of the exact punishments that were imposed as a result of the disciplinary hearing; and (6) a description of the conditions he encountered at FCI-Pekin (including an allegation that he is a convicted sex offender). Because the Court lacks the necessary information to analyze Plaintiff's claims, Counts 1, 2, and 3 shall be dismissed. The dismissal shall be without prejudice, however, and Plaintiff shall be granted leave to file an amended complaint, according to the instructions set forth below.

### Pending Motion

Plaintiff has filed a motion for recruitment of counsel (Doc. 3), in which he asks this Court to recruit counsel to represent him in this matter. There is no constitutional or statutory right to counsel in federal civil cases. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010);

*Johnson v. Doughty*, 433 F.3d 1001, 1006 (7th Cir. 2006). Nevertheless, the district court has discretion under 28 U.S.C. § 1915(e)(1) to recruit counsel for an indigent litigant. *Ray v. Wexford Health Sources, Inc*., 706 F.3d 864, 866–67 (7th Cir. 2013).

When a *pro se* litigant submits a request for assistance of counsel, the Court must first consider whether the indigent plaintiff has made reasonable attempts to secure counsel on his own. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (citing *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). If so, the Court must examine "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (quoting *Pruitt*, 503 F.3d at 655). "The question . . . is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty, and this includes the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial." *Pruitt*, 503 F.3d at 655. The Court also considers such factors as the plaintiff's "literacy, communication skills, education level, and litigation experience." *Id*.

In his motion, Plaintiff has disclosed no efforts to find counsel on his own. He overlooks the fact that he could write to attorneys or call them and request representation. He reveals that he has "some college" education and teaches writing at the prison. His pleading is both coherent and well-drafted; it simply needs further factual development. The claims he raises (i.e., due process, retaliation, and conditions of confinement) are not particularly complex. Although he takes medication for his seizures, Plaintiff does not complain that the medication is ineffective at controlling his condition or that it causes adverse side effects that might impact his ability to prepare an amended pleading. Under the circumstances, the recruitment of counsel is not

warranted at this time, and the motion (Doc. 3) is **DENIED** without prejudice to refiling as the case progresses.

<u>**Disposition**</u>

**IT IS ORDERED** that Plaintiff's complaint (Doc. 1) is **DISMISSED without prejudice** for failure to state a claim on which relief may be granted.

**IT IS FURTHER ORDERED** that Defendants **KRAWCZYK, CLAYTON, MALCOLM**, and **WALTON** are **DISMISSED** without prejudice, based on Plaintiff's failure to state any claim against these defendants upon which relief may be granted.

Plaintiff is **GRANTED** leave to file his "First Amended Complaint" **on or before September 24, 2015.** Should Plaintiff fail to file his first amended complaint within the allotted time or consistent with the instructions set forth in this Order, the entire case shall be dismissed with prejudice. FED. R. CIV. P. 41(b). *See generally Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915A. Further, the dismissal shall count as one of Plaintiff's allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

Should Plaintiff decide to file an amended complaint, it is strongly recommended that he use the forms designed for use in this District for such actions. He should label the form, "First Amended Complaint," and he should use the case number for *this* action. He should refer to the constitutional or statutory ground(s) for relief. Plaintiff should name the proper defendant(s). The amended complaint shall present each claim in a separate count, and each count shall specify, *by name*, each defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. Plaintiff should attempt to include the facts of his case in chronological order, inserting each Defendant's name where necessary to identify

the actors. Plaintiff should refrain from filing unnecessary exhibits. He should *include only related claims* in his new complaint. Claims against different defendants that are found to be unrelated to one another will be severed into new cases, new case numbers will be assigned, and additional filing fees will be assessed.

To enable Plaintiff to comply with this order, the Clerk is **DIRECTED** to mail Plaintiff a blank complaint form.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n. 1 (7th Cir. 2004). The Court will not accept piecemeal amendments to the original complaint. Thus, the first amended complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the first amended complaint. The first amended complaint is also subject to review pursuant to 28 U.S.C. § 1915A.

Plaintiff is further **ADVISED** that his obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable, regardless of whether Plaintiff elects to file an amended complaint. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: August 20, 2015**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**