IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PARIS CHERER #40440-048, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No. 15-cv-00771-NJR ) |
| OFFICER KRAWCZYK, and OFFICER CLAYTON, | ) ) ) ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is now before the Court for consideration of an amended complaint (Doc. 10) filed by Plaintiff Paris Cherer pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Plaintiff claims that while he was incarcerated at the United States Penitentiary in Marion, Illinois ("USP-Marion"), in December 2014, Officers Krawczyk and Clayton issued him a false disciplinary ticket, simply because they disliked his hair. (*Id*. at 8). The ticket resulted in a loss of good conduct credit, phone privileges, and commissary privileges. (*Id*. at 9). Plaintiff does not seek to overturn the ticket or punishment imposed as a result of the ticket. He also does not seek monetary damages against either defendant.

Instead, Plaintiff challenges a subsequent decision to transfer him to the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"). Plaintiff maintains that FCI-Pekin is not appropriate for a sex offender, like himself. He asks this Court to enter an order transferring him back to USP-Marion, terminating the two officers from employment, and reimbursing him for property that was lost during his transfer.

Plaintiff's amended complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. According to Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The amended complaint does not survive preliminary review under this standard, and it shall be dismissed.

**The Amended Complaint**

In December 2014, Officer Krawczyk approached Plaintiff at USP-Marion and asked him when he was going to get a haircut. (Doc. 10 at 5). Plaintiff, who wears his hair "spikey, but well groomed," responded by raising his hands in the "'Hands-up, Don't Shoot[!]' gesture which had been seen frequently due to the events in Ferguson, Missouri." (*Id*.). Officer Krawczyk became incensed by Plaintiff's response.

Officers Krawczyk and Clayton then issued Plaintiff an incident report, charging him with the unauthorized use of narcotics. (*Id*.). The report states, "Cherer is not currently on any medication that would cause him to test positive for any Barbitu[r]ates including phenobarbital." (*Id*.; Doc. 10-1 at 2). This statement was untrue. At the time, Plaintiff was taking phenytoin, an anti-epileptic medication that was known to cause positive test results for barbiturates. (*Id*.; Doc. 10-1 at 4). Plaintiff had been taking this medication for eight years. (Doc. 10 at 5). His medical records confirmed this fact, but Officer Clayton refused to make the records available to Plaintiff. (*Id*.).

Following the issuance of the incident report, Plaintiff was transferred to the special housing unit ("SHU") at USP-Marion. (*Id*.). While awaiting the hearing on his disciplinary ticket, he "stopped just about any staff member walking into the SHU" to complain about the ticket. (*Id*. at 6). He also submitted complaints about the false charges in writing.

Despite this, Plaintiff was found guilty of the rule violation at his disciplinary hearing. (*Id*. at 7). At the time of rendering the decision, the hearing officer stated, "It is unusual that an inmate has been brought before me charged with barbitu[r]ates and paperwork showing he is on the seizure medication allegedly causing the positive result. In light of the evidence before me, I must take the officer's word and find you guilty." (*Id*. at 7). Plaintiff was never provided with a

copy of the toxicology report or a written summary of the evidence supporting the hearing officer's decision.

Plaintiff's punishment included a loss of forty-one days of good conduct credit, ninety days of phone privileges, ninety days of commissary privileges, and a reduction in his pay to "maintenance pay" of $5.25 per month. (*Id*.; Doc. 10-1 at 16). He does not ask this Court to expunge the ticket, overturn his punishment, restore his good conduct credit, or award him monetary damages for the defendants' conduct.

Plaintiff's request for relief instead arises from subsequent events. Rather than returning to the general population following his disciplinary hearing, Plaintiff was taken back to the SHU. There, he complained constantly about the ticket. These complaints allegedly led to a decision to hold Plaintiff in the SHU at USP-Marion and then transfer him to FCI-Pekin. (Doc. 10 at 6). Plaintiff does not name either of the defendants in connection with these decisions.

But Plaintiff objects to the prison transfer. He insists that FCI-Pekin is not suitable for him because he is a sex offender. The facility offers no sex offender treatment programs, and he is targeted for "constant harassment and torment." (*Id*. at 8). Further, he lost personal property during the transfer that he has been unable to replace (*e.g.*, fans, clothing, books, hygiene items, and magazines). Plaintiff now seeks an order transferring him back to USP-Marion, terminating the two defendants from employment, and reimbursing him for property that was lost during his transfer.

In its discussion of Plaintiff's initial *pro se* complaint, the Court recognized the following three counts, which the Court will also use in this discussion of the amended complaint:

> **Count 1:** Defendants deprived Plaintiff of a protected liberty interest without due process of law, in violation of the Fifth[1] Amendment, by issuing him a false disciplinary ticket that resulted in his transfer from USP-Marion to FCI-Pekin.
>
> **Count 2:** Defendants retaliated against Plaintiff, in violation of the First Amendment, by issuing him a false disciplinary ticket that resulted in his transfer from USP-Marion to FCI-Pekin.
>
> **Count 3:** Defendants subjected Plaintiff to unconstitutional conditions of confinement or failed to protect him, in violation of the Eighth Amendment, by placing him in the SHU at USP-Marion and then transferring him to FCI-Pekin.

Again, while the Court uses these designations to analyze Plaintiff's claims, the designations do not constitute an opinion as to their merit.

## Discussion

The amended complaint articulates no colorable due process claim (**Count 1**), retaliation claim (**Count 2**), or conditions of confinement claim (**Count 3**) against Defendants Krawczyk or Clayton. Accordingly, all three claims shall be dismissed.

**Count 1 – Due Process**

Count 1 alleges that Plaintiff was denied due process before being found guilty of the unauthorized use of narcotics at USP-Marion and transferred to FCI-Pekin. At his disciplinary hearing, Plaintiff complains that he was denied a copy of his medication list that contained exonerating evidence; he never received a copy of the toxicology report establishing that he tested positive for drug use; and he did not receive a written summary of the evidence used to find him guilty of the rule violation.

---

[1] In its initial dismissal order (Doc. 9), the Court characterized Plaintiff's due process claim as a Fourteenth Amendment claim. It is the Fifth Amendment, not the Fourteenth Amendment, which supplies the guarantee of due process to federal inmates. *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005). In analyzing due process claims of federal inmates, however, Courts look to decisions in both contexts.

The due process claim fails for several reasons. To begin with, the amended complaint draws no connection between these alleged due process violations at Plaintiff's disciplinary hearing and his eventual transfer to FCI-Pekin. According to the allegations, the prison transfer was not part of the punishment he received at the hearing or a decision made by the defendants. The alleged due process violations are unrelated to the transfer decision.

Further, in complaining about the due process violations, Plaintiff has put the cart before the horse. "An essential component of a procedural due process claim is a protected property or liberty interest." *Domka v. Portage Cnty., Wis.*, 523 F.3d 776, 779 (7th Cir. 2008) (internal citations omitted). Without this, no process is due.

The Constitution itself "does not create an interest in avoiding transfer[s] within a correctional facility." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Wilkinson v. Austin*, 545 U.S. 209, 222-24 (2005); *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Likewise, inmates do not have a liberty interest in being housed at a particular facility. *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005); *Whitford v. Boglino*, 63 F.3d 527, 532 (7th Cir. 1995); *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000). A transfer from one prison to another generally does not affect a protected liberty interest, even if the conditions are more adverse. *See, e.g., Meachum*, 427 U.S. at 225.

A protected liberty interest arises only if the transfer "imposes atypical and significant hardships on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 223 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). The allegations in the amended complaint do not suggest that Plaintiff endured an "atypical and significant hardship." *Wilkinson*, 545 U.S. at 223 (*Sandin*, 515 U.S. at 484). He says nothing about the conditions he encountered

in the SHU at USP-Marion. Further, he does not describe conditions at FCI-Pekin that would give rise to a protected liberty interest. Instead, he complains about the lack of educational programming, including a sex offender treatment program. The Seventh Circuit has specifically held that inmates have no constitutional right to enroll in a sex offender treatment program. *Stanley v. Litscher*, 213 F.3d 340, 342 (7th Cir. 2000). "No fixed set of criteria entitles anyone to admission, and exclusion [from the SOP] leaves the prisoner with the normal attributes of confinement." *Id*. (citing *Sandin*, 515 U.S. 472; *Meachum*, 427 U.S. 215; *Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991) (en banc)); *Higgason*, 83 F.3d 807). Further, Plaintiff's references to a more dangerous yard or generalized harassment are too vague to satisfy the *Twombly* pleading standard, let alone establish an atypical and significant hardship that gives rise to a protected liberty interest.

The amended complaint describes no protected property or liberty interest that triggers due process protections under the Fifth Amendment. Accordingly, **Count 1** shall be dismissed with prejudice.

**Count 2 – Retaliation**

In order to state a claim for retaliation, a plaintiff must: (1) identify a retaliatory action; (2) name the appropriate defendants; and (3) "assert[ ] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins*, 395 F.3d at 375. Federal courts typically recognize a claim for "retaliation" when prison officials take adverse actions against prisoners for exercising their First Amendment rights. *See, e.g., Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); *Johnston v. Stovall*, 233 F.3d 486, 489 (7th Cir. 2000). The prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the defendant's actions. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff presents two different theories in support of his retaliation claim. First, Plaintiff alleges that Defendants Krawczyk and Clayton issued him a false disciplinary ticket for narcotics use and placed him in the SHU at USP-Marion because they disliked his hair. Second, Plaintiff claims that his detention in the SHU at USP-Marion was prolonged because he complained about the false disciplinary ticket, and he was eventually transferred to FCI-Pekin because of his "constant" complaints. Neither theory supports a plausible retaliation claim against the defendants.

### Retaliation-First Theory

First, Plaintiff claims that Defendants Krawczyk and Clayton issued him a false disciplinary ticket for narcotics use and placed him in the SHU because they disliked his hair. In the amended complaint, Plaintiff specifically states, "My protected conduct of not having my hair cut was indeed the motivating factor behind Officer Krawczyk's irrational conduct." (Doc. 10 at 8). Plaintiff has identified a retaliatory action (*i.e.*, the issuance of a disciplinary ticket) and named the appropriate defendants (*i.e.*, Krawczyk and Clayton), satisfying the first and second elements of a retaliation claim.

It is the third requirement that dooms his retaliation claim under this theory. Plaintiff identifies his hairstyle as a constitutionally protected activity, but he has not indicated how it is constitutionally protected. The Court is left to guess what constitutional source of protection exists.

It is true that outside the prison context, the right to maintain long hair has been recognized as constitutionally protected. *See, e.g., Holsapple v. Woods*, 500 F.2d 49 (7th Cir. 1974) (per curiam) (in the school context, individual's hairstyle is an element of liberty protected by Fourteenth Amendment); *Breen v. Kahl*, 419 F.2d 1034, 1036 (7th Cir. 1969) (in the school

context, "[t]he right to wear one's hair at any length or in any manner is an ingredient of personal freedom protected by the Constitution"). A long line of case establishes that students in public schools have a right to wear their hair any way they choose, regardless of whether political, religious, or racial expression is intended. *Id.*

The same is not true in the prison context, where prisoners can hide weapons in long hair or mask their identity by changing hairstyles. A constitutionally protected right generally only arises when a hair*cut* would infringe on another right, such as the free exercise of religion under the First Amendment, the right to be free from the unauthorized use of excessive force under the Eighth Amendment, or the right to equal protection of the law under the Fourteenth Amendment. *See, e.g., Hatch v. Briley*, 230 Fed. Appx. 598 (7th Cir. 2007) (recognizing possible First and Eighth Amendment claim arising from forced hair*cut* but concluding that claim(s) was time-barred). *But see Grayson v. Schuler*, 666 F.3d 450, 452 (7th Cir. 2012) (noting that policy banning long hair, even when motivated by a sincere religious belief, would pass constitutional muster). Plaintiff invokes none of these constitutional protections. Generalized comments, or even threats, about haircuts typically do not give rise to an independent right under the Constitution. *Martin v. Sargent*, 780 F.3d 1334 (8th Cir. 1985) (inmate's rights not violated by prison official's statement that he would have a "bad time" if he refused to cut his hair). And, to be clear, he has not claimed that the defendants are going to cut his hair without his consent or that they have threatened to do so.

But even if the Court assumes that Plaintiff's hairstyle is constitutionally protected, the amended complaint draws a tenuous connection, at best, between the protected activity and the issuance of the ticket. Plaintiff need only demonstrate that his constitutionally protected activity

was "a motivating factor" in the retaliation. *Bridges*, 557 F.3d at 546. The amended complaint does not satisfy this standard.

First, the ticket for drug use appears entirely unrelated to Plaintiff's conversation with the defendants. The chronology of events offers little in the way of clarifying information. By way of example, Plaintiff repeatedly complains that he was not given a copy of his toxicology report, making it clear that he *was* tested for drugs. Presumably, he submitted to the drug test *before* receiving a ticket for drug use. And, if that is the case, the defendants were likely unaffected by Plaintiff's haircut, or comments, at the time they approached him and issued the ticket. Plaintiff omits this information from his chronology of events. Without it, the allegations are simply too sketchy to suggest that Plaintiff's conduct was even "a" motivating factor in the issuance of the ticket. *Id*. The Court cannot allow Plaintiff to proceed with his first theory.[2]

### Retaliation-Second Theory

Likewise, Plaintiff cannot proceed with his retaliation claim under the second theory. He alleges that his detention in USP-Marion's special housing unit was prolonged because he complained about the false disciplinary ticket, and he was eventually transferred to FCI-Pekin because of his "constant" complaints. Specifically, Plaintiff alleges, "[M]y complaints regarding Officer Krawczyk and his egregiously fraudulent filing of an incident report against me led to me being left in the SHU and wrongly transferred to another facility." (Doc. 10 at 6).

Plaintiff identifies the retaliatory action (*i.e.*, a prison transfer) and a constitutionally protected activity (*i.e.*, filing grievances), satisfying the first and third elements of a retaliation

---

[2] The Court also considered the possibility that Plaintiff's response (*i.e.*, "Hands Up, Don't Shoot!") was constitutionally protected conduct. He tied the statement to the events that occurred in Ferguson, Missouri, following the death of an African-American male during an encounter with law enforcement in 2014. But Plaintiff in no way suggests that he responded to the defendants' question in this manner because of his race or to make a political statement, which might have given rise to constitutional protections. The allegations fall short of supporting a retaliation claim on this basis.

claim. But Plaintiff does not satisfy the second element of his retaliation claim under this theory, which is identifying the proper defendant in connection with the retaliatory action. The amended complaint does not indicate that either defendant made the decision to return Plaintiff to the SHU at USP-Marion after his disciplinary hearing *or* to transfer him to FCI-Pekin. He does not allege (or suggest) that a prison transfer was part of the punishment he received at the prison disciplinary hearing. By all indications, the defendants had *nothing* to do with the decision to return Plaintiff to the SHU at USP-Marion and then transfer him to FCI-Pekin. Having failed to establish any causal connection between the defendants and the retaliatory action, the retaliation claim fails under this second theory as well.

For the reasons discussed above, **Count 2** shall be dismissed with prejudice.

**Count 3 – Conditions of Confinement**

The conditions of confinement claim (**Count 3**) shall also be dismissed. The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm to an inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Pursuant to the Eighth Amendment, prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). Prison officials may be held liable under the Eighth Amendment, if they respond to a known risk of serious harm to an inmate with deliberate indifference, which is the equivalent of criminal recklessness. *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994).

As discussed in Count 1, the conditions described in the amended complaint do not meet this standard. In addition, Plaintiff draws no direct causal connection between these conditions and the conduct of the defendants; by all indications, they had little, if anything, to do with Plaintiff's continued placement in the SHU at USP-Marion, his eventual transfer to FCI-Pekin, or the conditions he encountered after his transfer. Accordingly, **Count 3** shall be dismissed with prejudice.

### Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1, 2,** and **3** against Defendants **KRAWCZYK** and **CLAYTON** are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted.

Plaintiff is **ADVISED** that this dismissal shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g). Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

If Plaintiff wishes to appeal this dismissal, his notice of appeal must be filed with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien*, 133 F.3d at 467. Moreover, if the appeal is found to be nonmeritorious, Plaintiff may also incur another "strike." A proper and timely

motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended.

The Clerk's Office is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: January 22, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**